So we'll hear argument in the first matter on the argument calendar, which is Lang v. Ashcroft. Mr. Kingston. Good morning, Your Honor. Good morning. The issue before the Court this morning is a determination of the petitioner's date of admission to the United States for application of deportability under Section 237A2AI. And more specifically, whether the petitioner's initial lawful entry into the United States after inspection and authorization by an immigration officer is his date of admission as defined by 101A13. Counsel, I'd really like you to address the issue of the date we use for the first commission of the crime. Your Honor, in which context? Well, in this context, because if, in fact, he committed the crime at the beginning of the time, it seems to me the other issue kind of is irrelevant. I would agree with that, Your Honor. But as stated in the government's brief on page 19, basically, that issue was not resolved below. As the government states, that accordingly when Mr. Lang committed the offense was not determined. There's a great deal of conflict in the record. I'm not sure I understand that because the immigration judge, rightly or wrongly, never mind that for the moment, the immigration judge said that based upon admissions that Lang committed the offense between December 95 and August 97, and that it would be absurd to say otherwise. It seems the significant point is the indictment, Your Honor. I understand. But look, mathematically, he admitted that 7 to 800 units per week were distributed, that there was a total value of 1,000,004, and that the offense conduct began in December of 95. The indictment is February to August, I think, of 97. And the map of it works out that during that period of time, assuming that's the only period we look at, he was doing, he was committing the crime. But we have to look at whether within a six-month period, it's a single count indictment, whether in a six-month period he sold $2,500 worth of product that was copyright infringed. But if you take his admissions, he had to have been. But it is not the admissions, I would submit, Your Honor, that clearly establish when the date of the offense occurred, because it is what he was convicted of. We must look at the indictment. He pled to the indictment. So we are limited to February to August, those dates. Even the judge's determination. Wait. Hold on. I understand all that. Just tell me why this is wrong. If he distributed 700 to 800 units per week, and if that conduct began in December of 95, and if the total value is 1,000,004, if he started in December, it would have taken two years to accomplish distribution at that level. That has to include the period of the indictment. Now, why is that wrong? Well, the offense could be committed clearly on a single day. It does not have to be over a protracted period of time. The offense could be committed on one day. It could be. But he admitted distribution of 700 to 800 units a week. But, Your Honor, there are several instances in the record below where there's conflicting evidence as to what the date of commission was. And that is why it simply was not decided below, because the immigration judge simply took the position that if you take the last date, if you take August 1997, then the adjustment date as 1994, then the offense was committed within five years. I have a slightly different question along the same theme. I read the I.J.'s decision as having decided the dates of commission of the crime along the lines that Judge Reimer has been suggesting, specifically at administrative record 94, which discusses the concession that this act started in December of 95. However, the BIA didn't take that up. They simply assumed that it would be the last day. That's correct. Let's say that we were to agree that no matter what the date of admission, the crime was committed within five years, but the BIA didn't reach that. Are we, after Ventura, empowered to deny a petition on that ground, or would we have to remand it to the BIA? I think the government's brief on this is correct. It would have to be remanded for the factual determination below, because that issue, as the date events, simply was not reached. Even though the I.J. reached it, the BIA simply punted on that, is what you're saying. Yes, and the judge below, the immigration judge, had very conflicting dates in the oral decision as to when it occurred. So the facts, again, in this case, are not disputed. We're looking at the date of admission. The date of admission was June 22, 1992, the date that he entered the United States lawfully after inspection by an immigration officer. And we know the date of his adjustment, June 1994. The BIA, based upon Rosas, interpreted the statute as indicating that the date of admission was the date when his status was adjusted. That's correct. Why don't we owe Chevron deference under Aguari to that construction of the statute? Because the matter of Rosas' decision and this Court's decision and Ocampo, I would submit, are both correctly decided, both correctly decided. But they are decided based upon a narrow issue, whether an alien who entered the United States without inspection, illegally, never entering, never having an admission to the United States occur, and subsequently adjust status to that of lawful permanent residency. In that situation, what is the date of admission? The matter of Rosas, Ocampo said the date of admission is the date of adjustment of status. Otherwise, there would be no enforcement or the congressional intent in Section 237A of the Act could not be carried out because a lawful permanent resident then would be, even though they were here legally, would be found inadmissible to the United States. Under 212A, we're dealing with Section 237A of the Act for aliens who were lawfully admitted to the United States, such as the Petitioner herein. So your answer is that it would be an impermissible interpretation. I mean, is that your position? No. I would look back just to the prior law, Your Honor, 241A, the predecessor statute, had the same situation except it dealt with the concept of entry. Entry under the old law was any coming into the United States with inspection or without. Under prior law, if a person entered the United States here, they were subject to removal under 241A, similar ground, within five years of entry. Entry was clearly established not to be adjustment of status, not to be adjustment of status. Here we have the situation. We have the definition of admission. We know the admission date. We don't have to search for it. It cannot be argued that there is an initial admission in 1992 and then a subsequent admission at adjustment of status. We have an established date and a definition of admission. Okay. Thank you. You want to save time? I think that in one less than a moment, just real quickly, the concept that we're dealing with is the difference between entry and admission. We have a history of statutes dealing with entry. We have a new statute dealing with admission. We have to view this in the historical context. Many people live in the United States for 5, 10, 20 years in valid nonimmigrant status after lawful admission into the United States. Those people would be removable under Section 237. And Mr. Lange would have been removable under 237 if the offense occurred within 5 years of his admission. But the clock does not start again for someone who entered lawfully. Thank you, Your Honor. Okay. Thank you, Mr. Kingston. Ms. Parker. May it please the Court. I'm Jennifer Parker of the Department of Justice, and I represent the respondent, John Ashcroft, in this matter. As the Court and as counsel has identified, the issue before the Court today is the meaning of admission for purposes of INA Section 237. I just want to let the Court know that this issue is also before another panel of this Court on Friday, the 7th, in Shivaraman v. Ashcroft, which is number 0272436. I'm sorry. Who's the panel? Do you know? I believe it's Reinhart's panel, Your Honor. What's the number again, please? 0272436. Okay. And it's the same issue where there was a legal admission and then the subsequent admission. Okay. Do they have the uncertainty as to when the crime was committed? I am not sure, Your Honor. I don't believe that that is an issue in that case. And the government would agree with Petitioner's Counsel that that is not an issue that this Court can address under Ventura because the Board did not make any determination as to when the actual offense was committed. So what we would have to do is to remand for determination of the date? Only if this Court were to determine that the adjustment of status was not an admission, which a Respondent submits it was an admission. Well, I'd like to ask you a question about that. The statute provides that admission is the lawful entry of the alien into the United States. I have a question. Under 101A13. Yes. That's true. But where else is it defined? That is a definition, and as the Board found and this Court agreed. Is there any other place in the statute where admission is defined? Well, 101A20 also talks about legal permanent residents being admitted as legal permanent residents. There's a lot of – there are many areas in the INA that talk about legal permanent residents as an admission. But, no, in 101A13 it doesn't specifically say that. However, even looking at the Board decision in the concurrence, I believe it was Board member Rosenberg who talks about how even under 101A13 it could be – the adjustment of status could be considered an admission because there is – there is an authorization, there is an inspection that goes along with adjusting. When a person comes into the United States and remains continuously thereafter, is it your position then that the statute provides that there may be multiple dates of, quote, admission, even though the person has not left and come back? In other words, if you come in, you're admitted lawfully, you leave, you come back, there's a new date of admission. In this case, and that happened here, too, but after the petitioner came in in 1992, he didn't leave. Yes, Your Honor. Well, the purpose of the adjustment of status was so that the petitioners don't have to leave the country. It's a benefit to the aliens here so that they don't have to leave the country to reapply for admission as a legal permanent resident. So that was why we have adjustment of status. We don't now require them to actually leave the country. They can stay here. However, it is still an admission. And as the Board and this Court have both recognized, the adjustment of status provision is an admission. And it is of no consequence whether the alien originally entered illegally or not. Either an adjustment of status is an admission or it's not an admission. And both the Board and this Court have reasonably interpreted the statute. Kagan, are you telling us that there are two admissions in this case? Well, he's had multiple admissions, Your Honor, because he's been in and out quite a few times. The statute says the last lawful admission, doesn't it? Under 237, it does not say the last lawful admission. It says within five years of admission. It doesn't say last lawful. There's nothing in it that says we have to look at the very, you know, the very his first admission, his last admission. It just says within five years of admission. Did it used to be true that in order to adjust status, the person had to actually physically leave and reenter? Yes, Your Honor. And that was, I think, I'm not real sure of the time dates. I don't have that information for you. But that was the purpose behind the adjustment of status provision was to allow these petitioners to, or these aliens to apply while here and not make them keep leaving the country and applying from outside. So it's a benefit to the alien to be allowed to stay here. But he had an admission in June of 1992. And you're not going to deny that that was not an admission? No, that wasn't an admission, Your Honor. He was also admitted. He was originally admitted in November of 1990. He was admitted again in July of 1991, September of 1991. It's similar to a person who comes here as a tourist possibly on every year. Each year they come back, they will be admitted. So there's nothing in the INA that prevents multiple admissions. And the adjustment of status should be considered just as this Court found in the  Adjustment of status is an admission. And it does not turn on whether he had a legal or illegal admission prior to that. It's an admission. So that you're saying that a crime within five years of any admission makes it makes him deportable or removable? Yes, Your Honor. And if you look at the adjustment of status provisions, once an alien adjusts status, they are given greater rights and responsibilities. And it is not unreasonable for the Board to interpret that as meaning yet another five-year probationary period starts with that admission because they are given greater rights and responsibilities now that they've been admitted to the United States as a legal permanent resident. If you look at many other provisions in the INA, it is legal permanent residency is referred to as an admission. They are admitted for legal permanent residency. And that is not inconsistent. That is not an inconsistent or unreasonable interpretation of the statute. And this Court should afford or accord the Board high Chevron deference in this case because they are interpreting a statute. And as you've all noticed, it is a bit ambiguous in the Section 237C or 237 context. So this Court should accord the Board's decision substantial deference under Chevron and acquire. But the person who doesn't seek an adjustment of status, in a way, is better off than the person who does because their time starts running sooner. If they don't seek an adjustment of status, they're going to have to, I mean, they can't, they may not be removable under 237 for a crime involving moral turpitude, but they will be removable because they've overstayed a visa or, you know, so they have to do something. They can't just keep staying here. If they're illegal, they'll be removed because they've never done anything to adjust their status or, you know, renew their visas. Well, but let's suppose a person originally comes in as a student or something and has permission to stay a while. I don't know if there's a limitation on the length of that. They don't necessarily have to be there. They didn't used to be addressed. But they wouldn't need to adjust anything. They would have already received that permission before they came. Once they, once that status is removed, once that ends, they would have to leave and get a new visa or apply for adjustment of status. If they, so within the first five years, I can't imagine, I don't know of any visas that will just allow you to stay continuously. They normally have to be renewed, especially particularly in the student status. You wouldn't be here for five years as a student. So they would have to renew it at some point, and those would all be admissions we could count towards a Section 237 offense. Because we, the whole point of 237 is to put the alien on a probationary period when they've been admitted. Each time, each admission, there's a five-year period where they cannot commit these types of crimes. And so to look at an adjustment of status as yet another period where we say, from that date you can't commit another crime, that is not an unreasonable interpretation of the statute. If we were to want to duck that issue and turn it on the date of the commission of the crime, and we agreed that this individual is removable, do we have to remand under Ventura? Or could we just say we agreed that this individual is not removable, but our decision is based on a slightly different issue? Your Honor, do you mean if you decide that the date of commission is actually August rather than December? Whatever the date of the crime, yeah. I think the question is, if we were to, could we hold that the I.J.'s interpretation of the facts, saying that the crime dated back into 1995 is supported by substantial evidence in the record, it wouldn't make any difference what his date of admission was. It doesn't, but Ventura makes it tricky for us. I mean, it's a tough one for us in this type of situation because the board didn't address it. Could we just remand it for the board to determine that in order to avoid the legal question, even if we couldn't decide it? Could we say to the board, if the crime was committed earlier, this legal issue is irrelevant, tell us, you know, you go decide if it was. The government's position is that you wouldn't have to remand in that. And if you decide that the adjustment of status, if you go along with Ocampo and decide that adjustment of status is an admission, then the other one would be remanded. No, no, that's, I'm asking you exactly the opposite question. You're saying if you decide August. Could we, could we, right. It would have to be remanded, Your Honor, under Ventura. Even if we agree on the result? I'm sorry, Your Honor. Even if we agree on the result that the individual is removable? Again, it's a tough position for the government because in this case, of course, we would like you to be able to do that. But there are other cases. It's a Chenery problem. Why is it a Ventura problem? Because if the I.J. made a finding, and the BIA just goes on a different basis, are we, we can't look through? Well, the board didn't address the situation. They basically said we don't need to look at the I.J. to do that. My simple question is can't we tell them to, though? Can't we just, without reaching this issue, couldn't we just say, BIA, tell us what the time of the crime was? Without reaching the issue for the court today? Your Honor, I'm. . . Without doing it ourselves, couldn't we just tell them, ask them to do that or tell them to do that? So you're saying in a situation where you find that the admission, that the adjustment of status was not an admission? No, we're not saying. . . No. We would not decide the issue. You're just not going to decide the issue? Do you just want to know? Your Honor, honestly, I'm not prepared to answer that question, but I can certainly do a supplemental briefing on that. I don't know the government's position in that case. I would assume that if you can't reach this issue without determining that, you could remand to the board on that limited issue, but I'm not 100 percent sure on that as far as my office's stance. We were pretty much prepared that this would be the issue before, so we didn't really discuss what would happen if you didn't want to reach this issue and just wanted to remand. But I would assume if that's the case, you would remand and have them decide that issue. Okay. Thank you. Mr. Kingston, to equalize the time, you have about a minute, a little over a minute. The only thing that I would like to point out is that adjustment of status has been a procedure available for a number of years, I believe since 1956, adjustment of status. So even under the prior law, 241A, adjustment of status was a provision of law, and that entry, even unlawful entry, is what triggered the beginning of the five-year rule. It was not the subsequent adjustment of status. And regarding the issue as to when the offense occurred, there is substantial confusion or ambiguity in the record below. If we look at the judge's decision, parts of it really aren't clear. On page 96 of the administrative record, even if I give the Respondent the benefit of the doubt and said that his criminal offense did not occur until August of 1997, it is still within five years of both those dates. There's ambiguity in the immigration judge's decision as to what the actual date is. And I believe the Board simply did not address the issue. It just did not look at that issue, and it's fundamental to this case. Okay. Thank you, Counsel. Is there anything else? All right. The matter just argued will be submitted.
judges: B. Fletcher, Rymer, Graber